488 So.2d 273 (1986)
J.O. MILLER, et al., Plaintiffs-Appellees,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, et al., Defendants-Appellants.
No. 85-193.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*274 Brinkhaus, Falgoust, Jerry Falgoust, Opelousas, for defendants-appellants.
Raymond Marie, New Iberia, for plaintiffs-appellees.
Taylor & Trosclair, Earl Taylor, Opelousas, for defendant-appellee.
Before STOKER, DOUCET and FALKENHEINER[*], JJ.
W.C. FALKENHEINER, Judge Pro Tem.
Mr. and Mrs. J.O. Miller filed suit against Lumbermens Mutual Casualty Company, Kemper Insurance Company, Walter R. Phythian, Jr. and Walter R. Phythian, III seeking damages to their 1979 Lincoln Continental Mark IV automobile in the amount of $1,266.22, plus costs and legal interest. The Millers also asked for judgment against the two insurance companies for penalties and interest authorized by LSA-R.S. 22:658.
Kemper Insurance Company was subsequently dropped as a party defendant. Lumbermens answered the petition admitting that it provided collision coverage to the Millers on their vehicle, but that it had satisfied all of its contractual obligations by an unconditional tender to the Millers of a sum of $334.02 for the actual damage in spite of the fact that the Millers allegedly violated the policy contract by depriving Lumbermens of the opportunity to view the damage and make an estimate prior to having the vehicle repaired. Lumbermens also filed a third party demand against the two Phythians.
The Phythians answered Lumbermens third party demand by asserting that they had satisfied their liability by payment of $334.02 to Lumbermens at its request.
After trial, the Trial Court found that the actual cost of repairs of plaintiff's vehicle was the sum of $650.00. It held Lumbermens and Phythians to be solidarily liable for the sum of $400.00 and Phythian to be liable for the sum of $250.00 which was the deductible amount under Lumbermens policy. The Court further found that Lumbermens was liable for penalties and attorney's fees, reasoning that its unconditional offer of $334.02 to the Millers was unreasonable and assessed penalties at twelve percent of $65.98 with attorney's fees in the amount of $2,500.00 and all costs. The Trial Court further dismissed the third party demand of Lumbermens against Phythian by virtue of accord and satisfaction.
Lumbermens has appealed and the Millers have answered the appeal requesting $1,500.00 additional attorney's fees for the appeal. The Millers do not appeal the judgment insofar as it fixed the cost of the repairs at $650.00. The Phythians have answered the appeal by alleging that the judgment of the Trial Court should be affirmed and all costs of the appeal paid by Lumbermens.

ISSUES ON APPEAL
(1) The actual cost of repair of the Millers' Continental automobile; i.e. whether the vehicle would be repaired for the amount of $334.02 as alleged by Lumbermens or the sum of $650.00 as determined by the Trial Court, and acquiesced in by the appellees.
(2) Whether Lumbermens was arbitrary, capricious, or without probable cause in its unconditional tender to the Millers of the sum of $334.02 on April 22, 1982, approximately thirty-three days after the accident.
(3) Whether the facts of the case justified finding an accord and satisfaction between Lumbermens and Phythian so as to satisfy the third party demand, and
(4) Whether the Millers are entitled to additional attorney's fees for the appeal.

*275 FACTS
Mr. and Mrs. Miller owned a 1979 Lincoln Continental Mark IV automobile and had obtained a collision insurance policy from Lumbermens. Under the policy the insurance company obligated itself, in the event of loss, to "pay for the loss in money; repair or replace ..."[1] On March 19, 1982, Mrs. Miller was involved in a minor collision with the juvenile son of Walter R. Phythian. Walter R. Phythian, III, caused his vehicle to collide with the right front door of Mrs. Miller's 1979 Continental. There was no apparent damage to the Phythian vehicle, there were no injuries, and the damage to the Continental was described by the investigating officer in his testimony as light to moderate. The indication on the accident report was for moderate damage. The Trial Court found that the accident was caused by the negligence of Phythian, and all parties acquiesce in this finding, which is justified by the record.
At the time of the accident, and continuously thereafter, Mrs. Miller made it known that she would not be satisfied with any repair to her automobile and that she wanted a new car. The accident occurred on a Friday, and the following Monday, March 22, 1982, the Millers began to seek recompense for their damages. Their first decision was to proceed against the liability carrier of Phythian, and they immediately contacted Phythian's insurance agent who advised them that there was liability coverage. At this point, the Millers did not notify Lumbermens and made no attempt to assert their rights under the collision policy.
The information obtained from Phythian's insurance agent proved to be an error with respect to the liability coverage, but at the time of first contact he advised the Millers to obtain two estimates of the damage. The Millers did proceed to Bordelon Motor Company on that same day and obtained an estimate of the damages in the amount of $1,266.22. This estimate was prepared by Tommy Hebert who testified and gave the lower estimate upon which the Trial Court relied.
The next day, March 23, 1982, the Millers contacted Mr. Broussard at Auto Mart in New Iberia where they began to negotiate for a new automobile in accord with Mrs. Miller's wishes. The Bordelon estimate was shown to Mr. Broussard who then negotiated a trade with the Millers on the assumption that they would receive $1,266.22 for the repair of their vehicle from the responsible parties. Broussard offered the Millers $6,300.00 for the damaged Continental, advising them that they would receive the $1,266.22, thus making the vehicle worth $7,566.22.
In order to assist the Millers with their collision claim, Broussard then proceeded to prepare a bogus estimate using the estimate form of C & B Auto Body Shop of New Iberia. Broussard claimed to have authority to make this in the name of C & B, and admitted that it was simply a duplication of the Bordelon estimate with the cost slightly higher so that the Bordelon estimate would be the lower of the two.
The Millers and Broussard then proceeded to consummate their deal on this basis with the Millers reserving the right to any claims against Lumbermens and Phythian for the damages. The Millers received a newer automobile from Broussard.
After consummating the deal with the Millers, Broussard immediately had the damaged automobile, which now belonged to him, repaired at his body shop which issued an itemized invoice dated March 29, 1982 to his used car department in the amount of $334.02 for the actual costs of repair. Meanwhile, on March 25, 1982, the agency which had issued the Lumbermens *276 policy was advised of the accident and the damage for the first time, but were also advised that the Millers were not going to seek payment under the collision policy, but were proceeding with an attempt to make a settlement with the Phythians and their liability insurer, Kemper. Later the Millers were advised that the Phythian's liability insurance had not been renewed and they then decided to proceed against their collision carrier, Lumbermens.
On April 7, 1982, they forwarded the Bordelon and C & B estimates to their insurance agency who advised Lumbermens of the claim. This was the first indication that the Millers wanted to assert their contractual rights under Lumbermens insurance policy. Lumbermens immediately contacted Martin Cormier, an independent appraiser, for the purpose of determining the cost of repair as required by the policy. Cormier immediately, and on the same day, proceeded to Auto Mart to examine the vehicle. He discussed the matter with Mr. Langlinais, the Auto Mart shop foreman who had done the repairs and who showed him the vehicle, telling him that it had already been repaired. Langlinais then furnished Cormier the invoice showing the actual cost of the repairs to be $334.02. Cormier took a picture of the vehicle and then made his report to Lumbermens.
There was some discrepancy in the serial numbers of the vehicle on some of the various documents, but these were of no consequence and there is no question in this case but that the vehicle shown to Cormier by Langlinais was the Millers' Continental which was damaged in the Phythian collision and is the subject of this litigation. Upon receipt of Cormier's report, Lumbermens processed it and issued its unconditional payment or check in the amount of $334.02 to the Millers.
Lumbermens then contacted Phythian on April 21, 1982 and made demand on them for the payment which it had made to the Millers and on April 21, 1982 received a check from Phythians in that amount. The actual unconditional payment sent by Lumbermens to the Millers was on April 22, 1982, but the Millers did not accept the payment and expressed dissatisfaction with the amount. The Millers then went back to Broussard at Auto Mart who, on April 30, 1982, attempted to change and amend the $334.02 invoice of March 29, 1982 to the sum of $934.51. This invoice was for replacing the door on the Millers' Continental and also adds some of the same parts and repairs listed on the original and was obviously also bogus. It was back dated to March 29, 1982 and was simply Broussard's attempt to satisfy the Millers.
When it became apparent that the Millers would not accept the $334.02 payment, and after suit had been filed on March 11, 1983, Lumbermens did, on April 13, 1983, write to Phythian and return the amount of $334.02 it had received from them.

THE COST OF THE REPAIR OF THE MILLER VEHICLE.
At issue here are the terms of a bilateral contract in which both the insured and the insurer undertake certain obligations. It is conceded that the obligation of Lumbermens under the contract was to pay the cost of repairs of the Miller vehicle less a $250.00 deductible. The Millers have alleged that Lumbermens has violated this obligation and that its violation was arbitrary and capricious so as to warrant application of the penalties and attorney's fees provided by law. Lumbermens alleges that the Millers violated the contract because they alienated the vehicle and caused it to be repaired without giving them reasonable opportunity to review the damage and make the proper estimate. In view of our decision relative to the cost of repairs, it is not necessary that we consider the full import of the alleged violation of the contract by the Millers, except insofar as it may have some bearing on the proof of cost.
This record contains the following information relative to the cost of repairs:
1. The Bordelon Motor Company estimate of March 22, 1982 in the amount of $1,266.22.

*277 2. The C & B Auto Body Shop estimate of March 23, 1982 in the amount of $1,328.78.
3. The Auto Mart invoice reflecting actual cost of repairs on March 29, 1982 in the amount of $334.02.
4. Testimony at the trial, including the accident report, indicating the relative minor nature of the collision, and the damages to the Continental.
5. The testimony of Tommy Hebert at trial to the effect that the cost would be between $700.00 and $800.00.
The Trial Court could not use either item one or two since item one, the Bordelon estimate made by Tommy Hebert while he was shop foreman, contemplated a completely new door, which all parties now acknowledge to be beyond Lumbermens' obligation. In addition, item two proved to be totally bogus and unworthy of consideration. This left only the Auto Mart invoice and the in-court testimony of Tommy Hebert, given without particularization and a considerable time after the accident.
The Trial Court apparently also relied upon the testimony of Mr. Broussard that the repair work done by his body shop was shoddy and his own opinion, again without amplification, that the picture (Lumbermens exhibit 2) did not accurately portray the condition of the door after repair. Examination of that picture, and consideration of the uncontradicted testimony of the witnesses, does not reveal any obvious flaws or problems with the repair job. That does not mean that there might not be some smoothing or corrections in the paint job which the photograph might now show up since it was only a polaroid snapshot, but on this record, and without further details, that is inconsequential.
The testimony of Broussard that his own repair job was shoddy is likewise unworthy of consideration. It should be remembered that he had a particular reason for making this statement in an attempt to justify his deal with the Millers and his attempt to get them the Bordelon estimate of the damages. Furthermore, Broussard was able to immediately dispose of the repaired Continental to third parties at a profit thereby indicating that the repair job presented no obstacle in consummating this advantageous transaction.
We are mindful of the standard of review required by this Court and that the findings of the Trial Court should be given great weight and not disturbed unless manifestly erroneous. We, nevertheless, conclude that the Trial Court was in error in assessing the cost of repairs in this case at $650.00 on the basis of the non-particularized in-court estimate of Tommy Hebert, given months after the accident had occurred and with no apparent foundation. We therefore conclude that the cost of repairs in this case should be fixed at the sum of $334.02.

PENALTIES AND ATTORNEY'S FEES
Having concluded that the unconditional offer of $334.02 made by Lumbermens to the Millers was proper, the Trial Court's award of penalties and attorney's fees is also manifestly in error. Even if that were not the case and the cost of repairs was $650.00 as determined by the Trial Court during the trial, it was only $65.89 short, was made within thirty-three days of the date of the accident, and only fifteen days after Lumbermens was notified that the Millers wished to assert their contractual rights. Those facts alone would seem to negate any finding of arbitrary or capricious action on the part of Lumbermens.
The Trial Court was obviously heavily influenced by its opinion that Lumbermens owed fiduciary duties to the Millers and breached those duties by playing "the insurance game". The Trial Court did not see fit to amplify its definition of "the insurance game", or exactly how Lumbermens was playing it other than some indication that Lumbermens was under a fiduciary duty to investigate the matter further after Cormier's report to it. This obligation to investigate further is grounded upon the fact that Lumbermens had Bordelon and C & B estimates in hand at the time *278 it paid the Millers the amount of the Auto Mart invoice. The Trial Court's position in this respect is manifestly erroneous in several important respects:
First, the contract of insurance created no fiduciary relationship between these parties nor did the facts of this case indicate such a relationship. There was a bilateral contractual relationship between them, but no fiduciary relationship.
"The general nature of the relation between an insurer and an insured is purely a contractual one even where the policy must in form comply with statutory or standard policy provisions. There is ordinarily no element of trust relationship involved, except that the duty of acting in perfect good faith rests upon each party to contract in view of the fact that insurance policies are traditionally contracts uberrimae fidei." 42 AM JUR.2d Insurance Section 159 (1982) at page 242.
Louisiana has adopted this same view.
"The Trial Court erred in holding that State Farm had a fiduciary responsibility to the plaintiffs herein. The relationship between State Farm and plaintiffs was that of seller and buyer which does not create any fiduciary duty to advise of any change in the law." Legendre v. Rodrigue, 358 So.2d 665, (La.App. 1st Cir.1978).
Thus there was an obligation in this contract insurance on the part of both Lumbermens and the Millers to deal with each other "uberrimae fidei", that is an absolute perfect candor and good faith, but there was no trust or fiduciary relationship by either party.
Secondly, the Court itself correctly found that Tommy Hebert's Bordelon estimate was invalid and could not be considered because it encompassed the replacement of the door with a new door which was entirely beyond Lumbermens' policy obligation. Since the Court was entitled to ignore this estimate, certainly Lumbermens was entitled to ignore it and no further investigation was called for since it was completely irrelevant. The same can be said for the C & B estimate since it had the same infirmities as the Bordelon-Hebert estimate, even if Lumbermens was unaware at that time of the other factors indicating its completely bogus nature. Accordingly, even if there had been a fiduciary duty, Lumbermens was not unreasonable or arbitrary in completely ignoring these two estimates which dealt with matters entirely beyond its policy obligations.
Thirdly, at the time Lumbermens got into the picture, the Millers had traded the car to Auto Mart which had subsequently resold it, at presumptively favorable conditions on each transaction to the parties involved. Lumbermens had no opportunity to observe the damage prior to its repair which they had every reasonable right to believe was completely satisfactory in view of the ease with which the vehicle was traded and sold. This constituted a technical violation of the policy provisions by the Millers and would cast at least some initial doubt upon their dealing with Lumbermens in good faith and candor as required by the law.
Finally, the Hebert opinion of the cost as being between $700.00 and $800.00 which was made in court at trial, and relied upon by the Trial Court, had not surfaced at the time Lumbermens made the offer. That opinion was given in court months after the accident and the apparent completion of this transaction. In fact, Hebert's opinion was elicited at the trial through interrogation by the Trial Court itself and apparently plaintiff was not even aware of it prior to the time it was given in court.
We are not confronted in this case with an interpretation or consideration of some provision of the insurance contract where the rules of liberal interpretation in favor of the insured apply.
When Lumbermens made its unconditional offer of $334.02, it was faced with the following facts and knowledge:
1. The vehicle had been repaired at an actual cost of $334.02.

*279 2. It appeared to be in satisfactory condition and that the repairs which were itemized appeared to be successful.
3. The accident causing the damage had been of a minor "fender bender" type.
4. The vehicle was traded by the plaintiffs to the dealer who made the repairs under conditions apparently satisfactory to both parties.
5. The new owner had immediately resold the vehicle to a third party without delay and under presumptively satisfactory conditions. The record indicated that Broussard had actually made an $800.00 profit.
The finding that Lumbermens was arbitrary and capricious so as to justify the application of penalties and attorney's fees under LSA-R.S. 22:658 was manifestly erroneous and must be reversed.

THE THIRD PARTY DEMAND
The Trial Court found that an accord and satisfaction had taken place by virtue of the Phythians furnishing Lumbermens with their check in the amount of $334.02 on April 21, 1982 in response to a request from Lumbermens. The check was initially accepted by Lumbermens. In this instance Lumbermens was acting for the Millers in collecting the $250.00 deductible and the difference between the deductible and the total itself. We agree with the Trial Court's reasoning on this point and will affirm.
Accord and satisfaction has been said to have three elements:
1. An unliquidated or disputed claim,
2. A tender of the debtor, and
3. An acceptance by the creditor.

Linda Mercantile Corporation v. Bowers, 230 So.2d 302 (La.App. 1st Cir.1970), Writ refused 255 La. 810, 233 So.2d 250 (La.1970). Amite County Co-op v. Heck, 393 So.2d 341 (La.App. 1st Cir.1980).
In this case all three of those elements appeared to be present when the tort feasor, Phythian, in this disputed claim, tended its check to Lumbermens at its request. The check was subsequently accepted and deposited. The attempted reimbursement after suit had been filed approximately one year later did not undo the accord and satisfaction which is an Anglo-American legal concept in the nature of compromise and has been adopted by Louisiana jurisprudence, although not specifically recognized in our Civil Code except in the general principles found in the articles on Of Giving in Payment (Civil Code Articles 2655, et seq.) and the articles on Of Transaction or Compromise (Civil Code Articles 3071, et seq.).
Accordingly, the judgment of the Trial Court will be affirmed in part and reversed in part. The judgment of the Trial Court in favor of J.O. Miller and Hazel L. Miller and against Lumbermens Mutual Casualty Company and Walter R. Phythian in the amount of $400.00 is reversed and there is judgment herein in favor of J.O. Miller and Hazel L. Miller and against Lumbermens Mutual Casualty Company and Walter R. Phythian in the sum of $84.02. The Trial Court judgment in favor of J.O. Miller and Hazel L. Miller and against Walter R. Phythian in the amount of $250.00 is affirmed.
The judgment ordering Lumbermens Mutual Casualty Company to pay plaintiffs' penalties and attorney's fees and judicial interest is reversed.
The judgment of the Trial Court ordering that the third party demand of Lumbermens Mutual Casualty Company against Walter R. Phythian be dismissed is affirmed.
Plaintiffs-Appellees will pay all costs of court.
AFFIRMED IN PART, REVERSED IN PART, AMENDED AND RENDERED AS AMENDED.
NOTES
[*] W.C. Falkenheiner, Judge Pro Tempore.
[1] The insurance policy was admitted in the record as Lumbermens' exhibit No. 1. The record in this court (transcript pages 62 et seq) apparently does not contain the entire policy. The above quotation of policy language is from the Court's reasons for judgment (transcript page 76), and there is apparently no dispute among the parties as to the finding of the Trial Court that Lumbermens had no obligation to replace the vehicle or any damaged portion, and that its obligation in this case is to repair the damage.