543 So.2d 68 (1989)
RAY GIBBINS CERTIFIED WELDERS, INC.
v.
Leo GRIGGS, et al.
No. CA 88 0071.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
Rehearing Denied June 2, 1989.
*69 Karl W. Cavanaugh, Baton Rouge, for Ray Gibbins Certified Welders, Inc.
Larry Starns, Denham Springs, for defendant Griggs.
Normand Pizza, New Orleans, for Gray and Co., et al.
Clarence Frost, New Orleans, for defendant Lloyd's.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
COVINGTON, Chief Judge.
Originally Ray Gibbins Certified Welders, Inc., plaintiff, filed suit against defendants, Griggs Insurance Co., Inc., Leo Griggs[1], and Gray & Company, Inc., for an accounting and money judgment. Thereafter, plaintiff amended its petition to assert numerous claims against the defendants and to bring in additional defendants, L.W. Biegler, Inc., North River Insurance Company, United States Fire Insurance Company, International Surplus Lines Insurance Co., and Certain Underwriters at Lloyd's of London. Subsequently, Griggs Insurance Co., Inc., filed a Chapter 11 petition in Bankruptcy Court and was severed from this suit.
In the Trial Court, plaintiff-appellee/second appellant sought to recover as outlined below:
I. Plaintiff, RAY GIBBINS CERTIFIED WELDERS, INC., claims Griggs Insurance Agency, Inc. and defendants, LEO L. GRIGGS, SR., GRAY & COMPANY, INC., L.W. BIEGLER, INC., NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES *70 INSURANCE COMPANY, jointly and in solido, owe plaintiff $294,176.20 because:
A. Griggs Insurance Agency, Inc. converted plaintiff's money as follows:
1. Griggs Insurance Agency, Inc. received from plaintiff $75,428.89 for premiums and contributions to the Loss Fund which it never remitted to defendant GRAY & COMPANY, INC., or the insurers.
2. Griggs Insurance Agency, Inc. used funds received from plaintiff (for premiums and contributions to the Loss Fund) for its own working capital for extended periods of time before remitting, for which plaintiff claims damages (in the form of interest as prescribed by statute) of $218,747.31.
B. Defendant LEO L. GRIGGS, SR. is personally liable for the corporation's misconduct because:
1. He personally participated in the wrongful acts of the corporation, Griggs Insurance Agency, Inc.
2. Every act done by the corporation with respect to plaintiff's account was by him personally or at his direction.
3. He had complete control of the corporation's bank accounts and accounting procedures, so that he is the author and chief actor in the corporation's illegal lapping scheme.
C. Defendant GRAY & COMPANY, INC. is liable in solido with defendant LEO L. GRIGGS, SR. for the conversion of plaintiff's money by Griggs Insurance Agency, Inc. because:
1. Griggs Insurance Agency, Inc. was the agent of defendant GRAY & COMPANY, INC. for the receipt of premiums and contributions to the Loss Fund from plaintiff.
2. As the principal, defendant GRAY & COMPANY, INC. is legally liable for the misconduct of its agent which fell within the scope of the agency.
3. Defendant GRAY & COMPANY, INC. was a fiduciary with respect to plaintiff and as such:
(a) It had the duty to notify plaintiff that Griggs Insurance Agency, Inc. was not remitting premiums and Loss Fund contributions properly.
(b) It did not do so.
D. Defendants L.W. BIEGLER INC., NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY are liable to plaintiff in solido with defendants LEO L. GRIGGS, SR. and GRAY & COMPANY, INC. because:
1. Defendant L.W. BIEGLER is the general agent for defendants NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY and had the power to appoint sub-agents.
2. Defendant L.W. BIEGLER, INC. appointed defendant GRAY & COMPANY, INC. its agent in Louisiana, and, hence, the sub-agent for defendants NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY.
3. Defendant GRAY & COMPANY, INC. had the power to appoint sub-agents, and so appointed Griggs Insurance Agency, Inc., making it the sub-agent or sub-sub-agent of defendants L.W. BIEGLER, INC., NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY for the receipt of premiums and contributions to the Loss Fund from plaintiff.
4. Alternatively, R.S. 22:1180 makes Griggs Insurance Agency, Inc. statutorily the agent of defendants NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY for the receipt of premiums and contributions to the Loss Fund from plaintiff.
5. As principals, defendants L.W. BIEGLER, INC., NORTH RIVER INSURANCE COMPANY, UNITED *71 STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY are legally liable for the misconduct to agent or sub-agent which falls within the scope of the agency.
II. Plaintiff RAY GIBBINS CERTIFIED WELDERS, INC. claims Griggs Insurance Agency, Inc. and defendant LEO L. GRIGGS, SR. owe plaintiff $887,684.00 because:
A. In the years 1974 and 1975, plaintiff delivered to Griggs Insurance Agency, Inc. approximately $1,000,000 on its insurance program and the Agency has failed to account for $78,544.62.
B. For the years 1975 and 1976, Griggs Insurance Agency, Inc. improperly debits plaintiff's account $14,200.18 which represents funds the Agency disbursed on behalf of Gladys Armstrong when the Agency failed to enroll properly her husband, plaintiff's employee, in plaintiff's group health plan.
C. Griggs Insurance Agency, Inc. improperly debits plaintiff's account for $4,419.00 for policies issued to R.A.G. Enterprises, Inc. a wholly separate corporation which is not affiliated with plaintiff.
D. Griggs Insurance Agency, Inc. breached its duty to use due care and diligence in procuring for plaintiff the desired insurance coverages at the best available price and, as a result thereof, plaintiff paid $790,520.20 more than necessary for its insurance from 1976 through March 14, 1981.
E. Defendant LEO L. GRIGGS SR. is personally liable for the corporation's misconduct because:
1. He personally participated in the wrongful acts of the corporation, Griggs Insurance Agency, Inc.
2. Every act done by the corporation with respect to plaintiff's account was by him personally or at his direction.
3. He had complete control of the corporation's bank accounts and accounting procedures, so that he is the author and chief actor in the corporation's illegal lapping scheme.
III. Plaintiff RAY GIBBINS CERTIFIED WELDERS, INC. claims that defendants GRAY & COMPANY, INC., L.W. BIEGLER, INC., NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY are liable jointly and in solido to plaintiff for $1,022,421.50 because:
A. Defendant GRAY & COMPANY, INC. received $38,402.79 for deposit to plaintiff's Loss Fund which it did not deposit to the Loss Fund but diverted to pay premiums to defendant L.W. BIEGLER, INC. or the insurers, all in direct breach of its contract with plaintiff, and in breach of its duties as a fiduciary to plaintiff.
B. Defendant GRAY & COMPANY, INC. received $35,734.08 for deposit to plaintiff's Loss Fund which it did not deposit to the Loss Fund but used as part of its working capital, all in direct breach of its contract with plaintiff, and in gross breach of its duty as a fiduciary to plaintiff.
C. Defendant GRAY & COMPANY, INC. on numerous occasions received funds for deposit to plaintiff's Loss Fund and held such funds, apparently using them as part of its working capital, for unreasonable periods of time before depositing them to the Loss Fund, for which misconduct plaintiff claims damages (in the form of interest as provided by statute) of $55,027.46, because:
1. Such misconduct is a breach of contract with plaintiff.
2. Such misconduct is a gross breach of this defendant's fiduciary duties to plaintiff.
D. When the Loss Fund developed a large surplus not needed in a demand deposit account, defendant GRAY & COMPANY, INC. failed to invest the surplus for plaintiff's benefit, for which plaintiff claims damages in the form of a return on prudent investment of $51,715.95 because:
1. The failure to invest the surplus was a breach of this defendant's duties as a fiduciary for plaintiff.
*72 E. An agent who breaches fiduciary duties to the principal is entitled to no compensation as a matter of law, for which reason plaintiff demands defendant GRAY & COMPANY, INC. disgorge the $192,374.00 plaintiff paid it as a service fee.
F. Although plaintiff's insurance needs were satisfied by policy limits of $1,000,000, defendant GRAY & COMPANY, INC., once they had trapped some of plaintiff's money in the Loss Fund, forced plaintiff to purchase policies with $2,000,000, $5,000,000, and $10,000,000 policy limits as a condition of its continuing to act as service agent under the Gray Plan; this conduct is an illegal tying arrangement which violates State anti-trust laws; plaintiff paid $175,402.66 for such unwanted policies and demands treble damages of $526,207.98, as provided by statute.
G. Although the basic insurance policies issued to plaintiff were for three years term, defendant GRAY & COMPANY, INC., in direct breach of contract with plaintiff, unilaterally increased the rates on such policies, from time to time, at a cost of $112,959.31 to plaintiff.
H. Defendants L.W. BIEGLER, NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, as principals, are legally liable for the misconduct of their agent or sub-agent, GRAY & COMPANY, INC. within the scope of the agency.
IV. In the event the Court holds that plaintiff cannot recover on its anti-trust claim, then in the alternative, plaintiff claims that defendants GRAY & COMPANY, INC., and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, jointly and in solido, owe plaintiff $79,326.66 and defendants GRAY & COMPANY, INC. and CERTAIN UNDERWRITERS AT LLOYDS, jointly and in solido, owe plaintiff $60,625.00, because:
A. None of these insurance companies are admitted companies authorized to do business in Louisiana.
B. The policies they issued to plaintiff (those with policy limits in excess of $1,000,000) were issued in violation of Louisiana laws governing surplus lines insurance, because:
1. The surplus lines broker, defendant GRAY & COMPANY, INC., insisted that plaintiff purchase these specific policies regardless of the availability of such coverages under policies issued by admitted companies authorized to do business in Louisiana.
2. The agent, Griggs Insurance Agency, Inc., failed to file a written request for the specific policies issued with the surplus lines broker, defendant GRAY & COMPANY, INC.
3. The agent, Griggs Insurance Agency, Inc., made no effort to procure the same coverages from admitted companies authorized to do business in Louisiana and it was never intended by the surplus lines broker, defendant GRAY & COMPANY, INC., that the agent attempt to do so.
C. R.S. 22:1256 permits the insured (plaintiff herein) to rescind any policy issued in violation of Louisiana laws governing surplus lines insurance.
D. On rescission of the policies, plaintiff is entitled to recover the premiums it paid, namely, $79,326.66 to defendant INTERNATIONAL SURPLUS LINES INSURANCE COMPANY and $60,625.00 to defendant CERTAIN UNDERWRITERS AT LLOYD's.
The trial court rendered judgment as follows:
1. In favor of plaintiff, RAY GIBBINS CERTIFIED WELDERS, INC., against defendant LEO L. GRIGGS, SR., for $82,959.67, with 12% per annum interest from date of judicial demand.
2. In favor of plaintiff, RAY GIBBINS CERTIFIED WELDERS, INC., against defendant, GRIGGS & COMPANY, INC., in solido with defendant, LEO L. GRIGGS, SR., for $75,428.89 of the above $82,959.67, with 12% per annum interest from date of judicial demand.
*73 3. In favor of defendants CARYL ANTONY VAUGHN GIBBS and BRITISH INSURANCE COMPANIES (CERTAIN UNDERWRITERS AT LLOYDS) dismissing plaintiff's demands.
4. In favor of third party plaintiff, GRAY & COMPANY, INC., and against third party defendant, LEO L. GRIGGS, SR., for $75,428.89, the amount of the judgment against GRAY & COMPANY, INC., plus interest and costs.
All costs were assessed against defendants LEO L. GRIGGS, SR., and GRAY & COMPANY, INC.
From this judgment, defendant-first appellant GRAY & COMPANY, INC. appealed. Plaintiff-appellee/second appellant, RAY GIBBINS CERTIFIED WELDERS, INC., appealed insofar as the judgment was adverse to it. CERTAIN UNDERWRITERS AT LLOYD's responded by brief to affirm the trial court's judgment as it affected this defendant. LEO L. GRIGGS, SR. has not appealed, so the judgment is final as to him.
The suit, as far as I A-C above, arises out of the following facts, as developed from the evidence presented by all of the parties over a considerable period of time and several hearings and trials. (The suit was tried on March 5, 6, 7, 8, 1985; July 1, 2, 3, 1985; February 5, 6, 1986; and September 15, 16, 17, 18, 1986, taking about three weeks of testimony, with over 150 exhibits). Oral arguments were heard on February 26, 1987; April 1, 1987; May 26, 1987; and June 8, 1987. There were several amended judgments following lengthy "Judgment Conferences."
In 1976, a program of insurance, known as the GRAY PLAN, (Appendix I) was established for GIBBINS through GRIGGS AGENCY; it was GRIGGS AGENCY's responsibility to select the types and kinds of insurance coverage needed by GIBBINS. The program was a modified plan of self-insurance up to $35,000 for each occurrence with respect to its employer's liability, worker's compensation, and general liability. For claims within the self-insured retention, GRAY established a Loss Fund. GRAY also placed excess coverage for worker's compensation and general liability with upstream insurance carriers, up to a point.
Beyond that point, which changed from time to time over a period of some years, GRIGGS AGENCY and GIBBINS obtained other excess coverage through another insurance broker, not involved in this action.
Under the GRAY PLAN, GRAY was to obtain certain insurance coverage for GIBBINS, and to maintain a Loss Fund for payment of losses falling within the self-insured retention; and service claims under the GRAY PLAN; GIBBINS was to pay premiums and contributions to GRIGGS AGENCY; GRIGGS AGENCY was to collect premiums and Loss Fund contributions, and any other GRAY billings, and remit to GRAY, as shown by the Limited Agency Agreement (Appendix II).
In implementation of the GRAY PLAN, GIBBINS was required to submit payroll reports to GRIGGS AGENCY, who was to forward them to GRAY. Based on these payroll reports, GRAY would bill for premiums for the insurance coverage and contributions to the Loss Fund by sending the billings to GRIGGS agency, who was to send them to GIBBINS. Whereupon, GIBBINS was to remit to GRIGGS AGENCY, who was required to remit to GRAY. In turn, GRAY was to pay the upstream insurance carriers and allocate monies to the Loss Fund for payment of any claims under the self-insured part of the GRAY PLAN, and was to service all claims. Under the GRAY PLAN, monies left after claim exposure had ended was to be refunded to GIBBINS. The Loss Fund was a joint bank account and was under the control of GIBBINS and GRAY. No monies could be paid from the fund except by check signed by representatives of GIBBINS AND GRAY, with only GRAY being able to decide when payment was to be made to pay claims against GIBBINS and costs of investigation and defense against such claims.
The facts established at trial show that GIBBINS forwarded sufficient funds to *74 GRIGGS for premiums and Loss Fund contributions. GIBBINS was provided by GRAY with the appropriate insurance coverage. There was no lapse in coverage. There was, however, a breach by GRIGGS AGENCY of its obligations under the GRAY PLAN in that GRIGGS AGENCY failed to remit to GRAY adequate funds to cover both premiums and Loss Fund contributions, and failed to set up a separate bank account: The evidence established that GIBBINS had paid GRIGGS AGENCY the sum of $82,959.67 during the GRAY PLAN, which amount was used by GRIGGS AGENCY for operational expenses or working capital of the insurance agency; and that GRIGGS AGENCY failed to remit to GRAY the sum of $75,428.89.
La.R.S. 22:1162 defines a broker as follows:
An "insurance broker" is hereby defined to be an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent.
The question of whether an insurance broker in a particular transaction is acting as the agent of the insured or the insurer is one of fact dependent on the particular circumstances of the case. Economy Auto Salvage, Inc. v. Allstate Insurance Company, 499 So.2d 963 (La. App. 3 Cir.1986), writ denied, 501 So.2d 199 (La.1986); Thibodeaux v. Lumbermen's Mutual Casualty Company, 448 So.2d 888 (La.App. 3 Cir.1984); Foster v. American Deposit Insurance Co., 435 So. 2d 571 (La.App. 3 Cir.1983).
In Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821, 824 (La.App. 3 Cir.1972), affirmed 281 So.2d 728 (La. 1973), the Court said:
There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance.
We conclude that there is sufficient evidence to support the trial court's finding that an agency relationship existed between GRIGGS AGENCY and GRAY in connection with the Loss Fund, as well as in certain other respects dealing with the GRAY PLAN. The acts of a party functioning as the agent of a principal are imputable to the principal. Sorapuru v. Jeffers, 378 So.2d 524 (La.App. 4 Cir.1979).
Turning now to GIBBINS' specifications of error, we find no merit in any of them, as discussed hereinafter.

SPECIFICATION OF ERROR NO. I
GIBBINS contends that the court below erred in not finding the upstream insurance carriers solidarily liable with GRAY and with LEO L. GRIGGS, SR.
The facts established on the trial of this matter clearly show that the breach of contract in connection with GRAY PLAN Loss Fund was committed by GRIGGS INSURANCE AGENCY, and that GRAY, accordingly, as the agency's principal, is liable to GIBBINS in the amount of $75,428.87. The lower court's judgment against GRAY & COMPANY, INC. was not based upon a factual determination that GRAY mismanaged GIBBINS' funds or failed to bind insurance for GIBBINS or let GIBBINS' insurance lapse. The factual determination was that GRIGGS AGENCY had mismanaged GIBBINS' funds, and that GRAY was liable due to the agency relationship between GRIGGS AGENCY and GRAY. The upstream insurance carriers had nothing to do with the management of the Loss Fund of the GRAY PLAN, as the trial court ruled. GRIGGS AGENCY had no contractual relationship with the upstream *75 carriers, so that any acts of mismanagement by GRIGGS AGENCY cannot be imputed to these parties. We find that La.R.S. 22:1180 does not make the upstream insurance carriers liable under the circumstances of this case.
La.R.S. 22:1180 speaks to the unauthorized insurance agent who applies for particular policy of insurance from an insurer and receives the amount for payment of the premium from the insured.
La.R.S. 22:1180 provides:
Any insurer which issues or delivers a policy or contract of insurance pursuant to the application or request of an agent or broker who is not authorized to represent said insurer as an agent shall be deemed to have authorized such agent or broker to receive on said insurer's behalf payment of any premium on such policy or contract of insurance. Such payment to an agent or broker shall be deemed to be payment to the insurer.
It is not the intent of this Section to create any agency relationship except for the matter of collection of premiums specifically referred to herein.
As stated in the quoted provision, it does not create "any agency relationship except for the matter of collection of premiums specifically referred to herein." La.R.S. 22:1180 does not make GRIGGS AGENCY or GRAY an agent of the upstream carriers under the circumstances of the instant case.

SPECIFICATION OF ERROR II
In this specification of error, GIBBINS argues that the lower court erred in failing to award GIBBINS damages against all defendants for conversion of the premiums and contributions to the Loss Funds remitted by GIBBINS to GRIGGS AGENCY.
There is no merit in this argument as shown by the lower court's holding that GRIGGS AGENCY breached its contract with GIBBINS under the GRAY PLAN. Further, the evidence establishes that neither Mr. Griggs nor GRIGGS AGENCY was authorized to commingle or misappropriate any of the funds involved.
In Miller v. Lumbermens Mutual Casualty Company, 488 So.2d 273, 278 (La.App. 3 Cir.1986), writ denied, 493 So.2d 637 (La.1986), the Court said:
First, the contract of insurance created no fiduciary relationship between these parties nor did the facts of this case indicate such a relationship. There was a bilateral contractual relationship between them, but no fiduciary relationship.
The general nature of the relation between an insurer and an insured is purely a contractual one even where the policy must in form comply with statutory or standard policy provisions. There is ordinarily no element of trust relationship involved, except that the duty of acting in perfect good faith rests upon each party to contract in view of the fact that insurance policies are traditionally contracts uberrimae fidei. 42 AM JUR. 2d Insurance Section 159 (1982) at page 242.
Louisiana has adopted this same view. The Trial Court erred in holding that State Farm had a fiduciary responsibility to the plaintiffs herein. The relationship between State Farm and plaintiffs was that of seller and buyer which does not create any fiduciary duty to advise of any change in the law. Legendre v. Rodrigue, 358 So.2d 665 (La.App. 1st Cir.1978).
Thus there was an obligation in this contract of insurance on the part of both Lumbermens and the Millers to deal with each other `uberrimae fidei', that is an (sic) absolute perfect candor and good faith, but there was no trust or fiduciary relationship by either party.

SPECIFICATION OF ERROR III
GIBBINS now contends that the trial court erred in refusing to grant judgment in favor of plaintiff for the funds remitted to GRAY for deposit in the Loss Fund account, which funds were allegedly used to remit premiums to defendant BIEGLER on excess policies.
There is no merit in this contention. The GRAY PLAN establishes that GRAY's *76 duty to make deposits in the Loss Fund was contingent on its receiving sufficient funds from GIBBINS and GRIGGS AGENCY. Moreover, the shortage in the Loss Fund was correctly disposed of by the trial judge in his judgment in favor of plaintiff and against GRAY solidarily with Mr. Griggs.

SPECIFICATION OF ERROR IV
GIBBINS presents the issue of the trial court's refusal to grant damages in favor of plaintiff for GRIGGS AGENCY's conversion of contributions to the Loss Fund.
This issue has been disposed of in our discussion under Specification of Error II. In addition, as appears from the Memorandum of Agreement (Exhibit P-35), the only requirement as to the balance of the Loss Fund was that a minimum balance be maintained. The record supports GRAY's position that GRAY maintained such a balance as required by the Memorandum of Agreement.

SPECIFICATION OF ERROR V
It is plaintiff's contention in this Specification of Error that the lower court erred in its failure to render judgment in its favor on the ground that GRAY failed to invest the surplus that accumulated in the Loss Fund.
The answer to this contention is simple. There was no contractual obligation imposed on GRAY to invest such funds. Moreover, the evidence establishes that GIBBINS rejected GRAY's reasonable offer to invest such funds in two well-established and financially sound banking institutions. There is no merit in this specification of error.

SPECIFICATION OF ERROR VI
Plaintiff specifies as error the trial court's refusal to render judgment in its favor for the alleged "unilateral rate increases" imposed by GRAY. The case of Fidelity & Casualty Company of New York v. Callicott, 88 So.2d 724 (La.App. 1 Cir.1956), disposes of this issue. Plaintiff can not be heard to complain of increased premiums where it received additional insurance protection for which it agreed to pay. There was no unilateral rate increase under the circumstances of the instant case. See also All Lines Insurance Agency, Inc. v. Malkove, 359 So.2d 1349 (La. App. 4 Cir.1978).

SPECIFICATION OF ERROR VII
GIBBINS argues that the trial court erred in not granting judgment in plaintiff's favor for the recovery of a service fee paid to GRAY, because GRAY breached its fiduciary duties owed to GIBBINS. There is no merit to this contention. We have disposed of this issue under our discussions in the foregoing issues. We held in specification of Error II that under the Miller case, supra, the contract of insurance created no fiduciary relationship between these parties.

SPECIFICATION OF ERROR VIII
In this argument, plaintiff claims that the trial court should have awarded it treble damages because of violations of the State anti-trust laws by means of an "illegal tying arrangement."
The facts found by the trial judge do not show an illegal tying arrangement. GIBBINS was free to accept the additional coverage or make other arrangements. It selected coverage provided by GRAY under the GRAY PLAN. The Louisiana Anti-Trust laws, La.R.S. 51:121 et seq. were not violated.

SPECIFICATION OF ERROR IX
As an alternative argument, GIBBINS claims that certain surplus lines insurance policies were illegally issued and should have been rescinded by the trial court.
We find that La.R.S. 22:1257 as applied to the facts established in the record of the instant case, shows no illegal issuance.
La.R.S. 22:1257 provides:
If certain insurance coverages cannot be procured from authorized insurers, such coverages, hereinafter designated as "surplus lines," may be procured from unauthorized insurers subject to the following conditions:
(1) The insurance must be procured through a licensed surplus line broker.
(2) A written request must be filed with the surplus line broker for the insurance *77 desired, stating that, after diligent effort, such insurance has not been procurable from authorized insurers.
(3) Within thirty days after each quarter, the surplus line broker shall file with the commissioner of insurance an affidavit to accompany the quarterly tax statement pursuant to R.S. 22:1265(A)(2), stating that he has received the request referred to in Paragraph (2) of this Section and that, to the best of his knowledge and belief, such insurance was not procurable from authorized insurers.
We find that La.R.S. 22:1257 was complied with under the circumstances of this case. The trial court properly declined to order a rescission.
As to the GRAY appeal, we can give it no relief. The conclusions of this opinion, above, especially as to the relationship of GRAY vis-a-vis GRIGGS, preclude any such relief.
For the foregoing reasons, the appealed judgment of the trial court is affirmed, at the costs of plaintiff-appellee/second appellant, RAY GIBBINS CERTIFIED WELDERS, INC., and of defendant-appellee/first appellant, GRAY & COMPANY, INC., one-half to each of the named parties.
AFFIRMED.
NOTES
[1] This defendant, in further pleadings, is called Leo L. Griggs, Sr.