572 So.2d 310 (1990)
DeSOTO PARISH SCHOOL BOARD, Plaintiff/Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA and Am-West Insurance Agency, Inc., Defendant/Appellees.
No. 21893-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
Writ Denied February 8, 1991.
*311 Hargrove, Guyton, Ramey & Barlow by Clair F. White, Mark W. Odom, Shreveport, for DeSoto Parish School Bd.
Cook, Yancey, King and Galloway by Herschel E. Richard, Jr., Lee H. Ayres, Shreveport, for Insurance Co. of North America.
Miciotto, Blanchard & Fant by John F. Fant, Shreveport, for Am-West Ins. Agency, Inc.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
This is a suit concerning the fraudulent conversion of insurance premiums by an insurance agency, Am-West Insurance Agency, Inc. The plaintiff, the DeSoto Parish School Board (hereinafter referred to as "the Board"), appeals from a trial court judgment in favor of one of the defendants, Insurance Company of North America (INA), rejecting the claim of the Board for return of the converted premiums and holding the Board liable for the payment of additional premiums not received by INA. For the following reasons, we reverse the judgment of the trial court.

FACTS
In 1987, the Board invited four agencies to submit quotes for worker's compensation insurance for the period of April 26, 1987, to April 26, 1988. The agency to whom the contract was awarded was Am-West, a company with which the Board had a prior working relationship. Am-West was unable to place coverage in the voluntary market. Consequently, it submitted an application to the Louisiana Worker's Compensation Insurance Plan (also referred to as the Assigned Risk Pool). As a result of this application, a binder was issued to the Board by the National Council on Compensation Insurance/Southern Division, naming INA as the insurer. INA was assigned this risk randomly by computer and had no prior relationship with Am-West. INA later issued a worker's compensation and employer's liability policy to the Board, replacing the binder.
The Board paid $76,628.95 in premiums to Am-West. However, Am-West transferred only $39,029 to INA. Following a billing audit by INA, the Board, pursuant to the advice of counsel, paid directly to INA additional premiums of $15,860 in order to maintain coverage.
The Board paid a total of $92,488.95 to Am-West and INA. However, the total earned premium was only $67,173. Therefore, the Board demanded a refund of $25,315.95. When INA and Am-West refused to refund the money, the Board filed suit against them on September 18, 1988.
On October 18, 1988, INA filed an answer and cross-claim. In its cross-claim, INA claimed that it only received $54,889 in premiums. INA sought indemnification or contribution from Am-West for any sums it might be called upon to pay. On December 20, 1988, INA filed an amending and supplemental answer, reconventional demand, and amending and supplemental cross-claim. In its reconventional demand, INA asserted that of its earned premiums of $67,173, it had received only $54,889. Thus, it sought recovery of $12,284 from the Board in unpaid premiums. In its amended cross-claim, INA requested that if its reconventional demand was denied, Am-West be ordered to pay the unpaid premiums.
On August 7, 1989, the Board and Am-West entered into a joint stipulation as to liability and damages. Pursuant to this stipulation, a consent judgment was rendered against Am-West and in favor of the Board for the amount of the overpayment of premiums in the sum of $25,315.95, together with legal interest thereon from date of judicial demand, until paid, and for all costs of the proceedings. (However, *312 Am-West was already defunct at this time.)
Trial was held on August 8, 1989. The Board and INA entered into several stipulations of fact. Among these stipulations, the parties agreed that membership or participation in the Assigned Risk Pool was not required by law as a prerequisite to the right to issue worker's compensation coverage in Louisiana. Furthermore, the parties stipulated that some members of the plan become "servicing carriers". These servicing carriers take assignments of risk from the plan and issue policies to the applicants. INA was a contracting servicing carrier at all relevant times, and, as a consequence, could not refuse to issue a policy to a qualified applicant, like the Board. Furthermore, the parties stipulated as to the amounts of premiums earned, claimed, and paid by the respective parties, as outlined hereinabove.
The Board presented the testimony of Steven Stanfield, its director of business and operations, who was responsible for obtaining insurance for the Board. INA introduced into evidence the deposition of Thomas McCain, one of Am-West's founding partners. INA additionally presented the testimony of Gerald Henderson Nelson, a former solicitor for Am-West. Also testifying were Elizabeth J. Guest, INA's assistant manager of its financial unit, and Melba Cantrell, the Worker's Compensation Service Center manager for INA.
On September 5, 1989, the trial court issued a written opinion in which it found in favor of INA and against the Board. The court held that LSA-R.S. 22:1180, which establishes a mandatory agency relationship between insurers and agents such that payment of premiums to the agent is deemed payment to the insurer, was inapplicable. The court found that the statute did not apply to a situation involving the Assigned Risk Pool because of the lack of any meaningful relationship between the agent and an insurance company which was selected at random by the pool. In so holding the court relied upon Jackson & Jackson, Inc. v. Louisiana Offshore Insurance Agency, Inc., 508 So.2d 875 (La. App. 5th Cir.1987), writ denied 512 So.2d 1179 (La.1987).
The trial court further stated that an "agent", such as Am-West, must have "at least some apparent authority" beyond the ability to collect premiums before it could be deemed the insurer's agent. The court found that INA billed the Board directly, but the Board chose to pay the premiums to Am-West because of a mistaken belief that the agency was authorized to receive such payments.
A judgment was signed on September 15, 1989, in favor of INA and against the Board, awarding INA the sum of $12,284, together with legal interest from the date of judicial demand until paid, and "25% additional as attorney fees for collection of the open account." The Board's demand against INA for reimbursement of the amount of overpayment of premiums was rejected at its costs.
The Board appealed. It assigns as error the following: (1) the trial court erred in refusing to apply the irrebuttal presumption of agency in R.S. 22:1180; (2) the trial court erred in not ruling that Am-West was clothed with apparent authority to act as INA's agent; (3) the trial court erred in ruling that INA was not liable to the Board for overpaid premiums misappropriated by Am-West; and (4) the trial court erred in awarding judgment in favor of INA for unpaid premiums which the Board paid to Am-West.
INA answered the appeal. While it strongly concurred in the judgment of the trial court and did not seek modification, INA requested that, if the judgment was modified in any fashion, it should be given judgment on its cross-claim against Am-West for unpaid premiums in the amount of $12,284, plus interest and costs, as well as indemnification or contribution for any judgment rendered against INA in favor of the Board.

APPLICATION OF LSA-R.S. 22:1180
The Board argues that the trial court erred in finding that LSA-R.S. 22:1180 was *313 inapplicable to a situation involving the Assigned Risk Pool.
LSA-R.S. 22:1180 provides:
Any insurer which issues or delivers a policy or contract of insurance pursuant to the application or request of an agent or broker who is not authorized to represent said insurer as an agent shall be deemed to have authorized such agent or broker to receive on said insurer's behalf payment of any premium on such policy or contract of insurance. Such payment to an agent or broker shall be deemed to be payment to the insurer.
It is not the intent of this Section to create any agency relationship except for the matter of collection of premiums specifically referred to herein.
The trial court relied upon Jackson & Jackson, Inc. v. Louisiana Offshore Insurance Agency, Inc., supra, for the proposition that this statute was inapplicable to a situation where the insurance was placed through the Assigned Risk Pool. After careful examination of this statute, we conclude that the trial court erred in that regard. The statute contains no special exemptionsor language of any kindto indicate that it applies only to consensual contractual relationships. To the contrary, it specifically applies when the policy was issued by an insurer "pursuant to the application or request of an agent or broker who was not authorized to represent said insurer as an agent."
Section 1180 was added to Title 22 in 1960. Since that time, only four cases in our jurisprudence have construed this statute. We have reviewed each of these cases, all from other circuits, and their interpretations of the statute, as an aid in applying the statute to the facts before us.
In Fidelity & Casualty Company of New York v. Bordelon, 428 So.2d 1162 (La.App. 5th Cir.1983), the insured had paid the premiums to an insurance salesman, whose checks to the insurer were dishonored for insufficient funds. The insurer brought suit against its insured to recover the unreceived premiums. The trial court sustained the insured's exception of no cause of action. The appellate court affirmed, finding that under R.S. 22:1180 payment to the insurance salesman was payment to the insurer. Therefore, the insurance company could not recover the unreceived premiums from the insured.
In Jackson & Jackson, Inc. v. Louisiana Offshore Insurance Agency, supra, an insurance broker fraudulently overcharged the insured. Consequently, the insured sued both the broker and the insurance company to recover the overcharged premiums. There, as in the present case, coverage had been placed with the Assigned Risk Pool, and there was no prior relationship between the insurer and either the broker or the insured. The appellate court affirmed the trial court's factual finding that the broker was the agent of the insured, not the insurer. The court stated that determining for whom the broker was agent was a factual issue to be determined according to the facts of each case. The court also rejected the argument that the broker had the apparent authority to act for the insurer, "except for collecting premiums". It further found that the broker's only function on behalf of the insurer was "to collect the premium". Although the court stated that the broker was the agent for the insurer for the collection of premiums, it nevertheless determined that the broker was the insured's agent and refused to impute the broker's fraudulent activity in collecting the excess premiums to the insurer. The court held that the insured must bear the loss.
In Grover v. Ratcliff, 526 So.2d 366 (La. App. 4th Cir.1988), an agent placed the insured's coverage with the insurance companies through a broker. The agent misappropriated the premium payments made by the insured. Thereafter, the insured's policies were cancelled for nonpayment of premiums. The insured filed suit against the insurance agent, broker, and insurance companies, alleging breach of contract, and seeking coverage and a return of the premiums he had paid. The court held that the insured was entitled to coverage since payment to an agent is payment to the insurance company under LSA-R.S. 22:1180. In the course of its discussion, *314 the court observed that the insurers were statutorily precluded from cancelling the policies under R.S. 22:1180 because any premiums paid to the agent were deemed to have been received by the insurers. The misappropriation of the funds by the agent did not affect this statutory obligation to maintain coverage.
In Ray Gibbins Certified Welders, Inc. v. Griggs, 543 So.2d 68 (La.App. 1st Cir. 1989), a modified program of self-insurance was established for the insured (Gibbins) through an insurance agent (Griggs). A general agent (Gray) established a Loss Fund for the self-insurance and placed excess coverage with upstream insurance carriers. Gibbins was to pay premiums and fund contributions to Griggs, which in turn, was to remit the funds to Gray. Gray was charged with paying the upstream insurance carriers and allocating funds to the Loss Fund. After discovering numerous misdeeds, including Griggs' failure to remit premiums and contributions to Gray, the insured brought suit against Griggs, Gray, and the upstream insurance carriers. The appellate court held that Griggs was Gray's agent and consequently held Gray responsible for Griggs' misconduct, specifically its mismanagement of the Loss Fund. The court refused to hold the upstream insurance carriers liable under the circumstances of this case. It found that the upstream carriers had nothing to do with the management of the Loss Fund and had no contractual relationship with Griggs. The court found that R.S. 22:1180, which deals with collection of premiums, did not make Griggs or Gray their agent under the facts of this case (which involves premiums and Loss Fund contributions).
Having reviewed the statute and the jurisprudence construing it, we believe the obvious purpose of R.S. 22:1180 is to protect the insured. It mandates a statutory relationship of agency between the insurance agent or broker and the insurer as to the collection of premiums. The jurisprudence and the statutes recognize a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance.[1]Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3rd Cir.1972), affirmed 281 So.2d 728 (La.1973).
However, La. R.S. 22:1180 provides an exception to this general rule that a broker is the insured's agent. Furthermore, the statute provides no exceptions restricting its application to coverage alone. To the contrary, we believe that "the collection of premiums" applies not only to coverage but to the amount of premiums collected by the insurance agent or broker and the manner in which the premiums are collected. It would frustrate the purpose of the statute to place the burden for the misappropriation by the insurance agent or broker upon the insured. To the contrary, the statute requires that this burden must be borne by the insurance company.
Consequently, we find that, under the circumstances of the case before us, the Board is entitled to recover the overpayments made to INA. Under the statute, Am-West was an agent for the purpose of collection of the premiums. Thus, payment to Am-West was payment to INA. Bordelon, supra. The overpayments constitute payment of a thing not due. LSA-C.C. Article 2304. In particular, we note that the Board paid $15,860 to INA after the billing audit and after Am-West's default had come to light rather than risk cancellation of their policies. *315 INA would not have been entitled to cancel this coverage. Grover, supra.
Under the provisions of LSA-R.S. 22:1180, it is clear that Am-West's fraudulent conduct in collection of the premiums as INA's statutory agent requires that INA be held solidarily liable with Am-West for the overpayments of the premiums. To the extent that Jackson & Jackson, supra, and Griggs, supra, hold to the contrary, we decline to follow them. Judgment will be rendered in favor of the board and against INA in the amount of $25,315.95, plus interest, and costs.

INA'S RECONVENTIONAL DEMAND
The Board argues that the trial court erred in awarding judgment of $12,284 in favor of INA on its reconventional demand against the Board. This amount represented the difference between the amount of earned premiums due INA ($67,173) and the amount it actually received from the Board and Am-West ($54,889).
LSA-R.S. 22:1180 is applicable. The Board's premium payments directly to Am-West in the amount of $76,628 were payments to INA under that statute. This was more than INA's earned premium of $67,173. (This was actually an overpayment of $9,455, in addition to the sum of $15,860 paid by the Board directly to INA to maintain coverage when Am-West's default came to light.) Although INA received from Am-West an amount less than the earned premiums, nevertheless, because Am-West was INA's agent for the collection of premiums pursuant to R.S. 22:1180, INA cannot seek recovery of these unremitted sums from the Board. See Fidelity & Casualty Company of New York v. Bordelon, supra.
Therefore, we reverse and set aside the portion of the judgment awarding to INA the sum of $12,284, together with legal interest from date of judicial demand until paid, and attorney fees of 25%.

INA'S CROSS-CLAIM AGAINST AM-WEST
INA answered the appeal, requesting that, in the event it was cast in judgment, that it be allowed recovery against Am-West. The record reveals that INA is entitled to judgment against Am-West in the sum of $12,284 for the unpaid premiums, together with legal interest thereon from date of judicial demand until paid, plus costs. Additionally, INA is entitled to indemnification from Am-West to the full extent of any amount it must pay to the Board.

CONCLUSION
The judgment of the trial court is reversed. Judgment will be rendered in accordance with this opinion as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, the DeSoto Parish School Board, and against the defendant, Insurance Company of North America, as a solidary co-obligor of Am-West Insurance Agency, Inc., in the full sum of Twenty-Five Thousand Three Hundred Fifteen and 95/100 Dollars ($25,315.95) together with legal interest from date of judicial demand, until paid, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that on the reconventional demand of Insurance Company of North America judgment is rendered herein in favor of the defendant-in-reconvention, the DeSoto Parish School Board, and against the plaintiff-in-reconvention, Insurance Company of North America, rejecting its claims.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that on the cross-claim of Insurance Company of North America against the defendant, Am-West Insurance Agency, Inc., there be judgment herein in favor of the cross-claimant, Insurance Company of North America, in the full sum of $12,284.00 together with legal interest thereon from date of judicial demand, until paid, plus all costs of these proceedings. Furthermore, judgment is rendered in favor of Insurance Company of North America for indemnification from Am-West Insurance Agency, Inc., for any and all amounts, including court costs, *316 which Insurance Company of North America may be required to pay the DeSoto Parish School Board under the terms of this judgment.
REVERSED AND RENDERED.
NOTES
[1] We note that R.S. 22:1162, which defines "insurance broker" was amended in 1988 to include the provision that "[t]he broker is deemed for all purposes to be the representative of the insured." However, this amendment was not effective until September 9, 1988, after the facts of this case arose. Consequently, we need not address the effect of this amendment but confine ourselves to the facts of this particular case.